HOOD, Judge.
This is a suit by the widow, children and grandchild of Ledo Pitre, deceased, to recover damages for the personal injuries sustained by and the wrongful death of the decedent. The action arose out of a collision between an automobile owned and being driven by the decedent, Ledo Pitre, and a truck owned by Virgil L. McKoin, d/b/a V. L. McKoin Trucking Service, and being driven by his employee, Benton Sum-merall. The suit was instituted against Summerall, McKoin and the latter’s public liability insurer, All State Insurance Company. The defendants answered denying negligence ■ on the part of the truck driver and alternatively pleading contributory negligence on the part of the decedent.
After trial on the merits, the trial judge concluded that the sole proximate cause of the accident was the negligence of the truck driver and that the decedent was free from contributory negligence. Judgment accordingly was rendered in favor of plaintiffs. Defendants have appealed. Plaintiffs have answered the appeal, praying principally that the awards be increased.
The accident occurred about 1:30 p. m. on November 21, 1961, at the intersection of U. S. Highway 167 and Louisiana Highway 749, in St. Landry Parish. Plighway 167 runs generally north and south in that area, but at the place where the accident occurred it curves gradually to the southeast. State Highway 749, which also runs generally north and south, intersects Highway 167 at this curve. The location of the highways at this intersection is such that a motorist driving north on State Highway 749 would enter the west side of U. S. Highway 167 on the outside edge of the gradual curve in the last-mentioned thoroughfare.
This type of crossing is commonly called a “Y” intersection, and because of the angle at which State Highway 749 enters the other thoroughfare, the intersection is unusually long and wide. U. S. Highway 167 is the preferred highway, and motorists on it have the right of way over motorists on the inferior intersecting road. Adequate signs and warnings have been installed at or near the crossing to show that the U. S. Highway is the superior thoroughfare. *404 There are at least two signs on Highway 749 warning motorists traveling in a northerly direction on that highway to stop before entering the intersection. Also, suspended over the center of State Highway 749, and located at about the point where that highway emerges into the wide, hard-surfaced area which constitutes the intersection, there is a red blinking trafile light designed to warn motorists driving north on Highway 749 of the danger as they approach the intersection. There is another amber-colored blinking traffic light located at the north edge of this intersection, which light faces north and is designed to warn motorists traveling south on Highway 167 of the fact that this is a dangerous intersection.
These two traffic lights, the amber-colored one located at the north edge of the intersection and the red blinking light located at the south edge, are about 3IS feet apart. Actually, if the center line of State Highway 749 is projected in a northerly direction, it would cross the center line of Highway 167 at or about the location of the red blinking light located at the extreme northern edge of the intersection. In spite of this fact, however, we think it is clear that the entire area between these two traffic lights constitutes the intersection of these two thoroughfares. The intersection, therefore, extends about 315 feet from north to south. It is 24 feet wide at the northern edge of it and it gradually increases to a width of 63 feet at the south edge of the intersection.
The trial judge concluded that the collision occurred two or three feet east of the center line of U. S. Highway 167, at a point almost midway between the two traffic lights. By actual measurement, the point of impact was 165 feet north of the red traffic light and 150 feet south of the amber traffic light.
The evidence shows that immediately prior to the collision Summerall was driving his employer’s International truck tractor, pulling a 34-foot trailer, in a southerly direction on U. S. Highway 167 at a speed of 45 to 47 miles per hour. After entering the intersection, and as he neared the Pitre vehicle which was approaching from the south, he turned his truck sharply to his left, and the right front portion of his truck struck the right front portion of the Pitre vehicle. The decedent, Mr. Pitre, had been driving in a northerly direction on State Highway 749, and he entered the intersection from that inferior highway immediately before the collision occurred.
There is considerable conflict in the testimony as to the manner in which the accident occurred. The driver of the Pitre vehicle died before the suit was filed, so his testimony was not available at the trial. The only other eyewitnesses to the accident were Summerall, the driver of the truck, Aldus Bertrand, who was riding as a passenger in the Pitre vehicle, and Joseph L. Guillory, who was driving in a southerly direction on U. S. Highway 167 behind the Summerall truck.
Summerall testified that the Pitre vehicle did not stop at this crossing, that it entered the intersection at a speed of approximately 45 miles per hour and that it did not at any time cross over or get into the northbound lane of traffic on U. S. Highway 167. He states that he was confronted with an emergency when Pitre entered the intersection directly in front of him, and in an attempt to avoid a collision he turned sharply to his left. His testimony to that effect is supported by that of Mr. Guillory.
Bertrand, on the other hand, testified that although Pitre had been driving 45 miles per hour as he approached the intersection, he slowed down and “pulled to the apron and curved the car toward the easterly direction,” that he thereupon stopped on the apron, then proceeded to cross to the east, or northbound, lane of Highway 167, and he traveled a distance of 70 to- 75 feet in a northerly direction in that lane of traffic to the point where the accident occurred. He states that Pitre was driving at a speed of 20 to 25 miles per hour from the time he *405 entered U. S. Highway 167 until the time of the collision, that the Summerall truck began veering into Pitre’s lane of traffic when the vehicles were seven or eight car lengths apart, and that Pitre veered his car sharply to his left j ust before the collision occurred.
The trial judge, apparently accepting Bertrand’s version of how the accident occurred, concluded that Pitre came to a stop “making a slight turn to the right in order that his automobile would be at a right angle with the highway” before entering U. S. Highway 167, that upon being told by Bertrand that the road was clear to his right he then drove into the intersection and proceeded northward on Highway 167 in his right, or northbound, traffic lane for a substantial distance to the point of impact, which occurred in Pitre’s lane of traffic, and that Pitre remained in his lane of traffic until a moment before the impact when he cut to his left in order to avoid striking the truck. The trial judge, having observed the witnesses as they testified, is in a better position than we are to determine their credibility, and for that reason we find no error in the conclusions of fact which were reached by the trial court.
Under the facts as found by the trial judge, however, we think it is clear that the decedent was negligent in entering the intersection when it should have been apparent to him that he could not negotiate it in safety, and that his negligence in doing so constitutes a proximate and contributing cause of the accident, barring plaintiffs from recovery. For the purpose of this suit, therefore, we will assume that Sum-merall was negligent (without determining that issue) and we will consider only the question of the contributory negligence of the decedent, Pitre.
Considering the speed at which each of the vehicles was being driven, the distance which the Pitre car traveled on U. S. Highway 167 before the accident occurred, the fact that the Pitre vehicle entered the preferred highway at a right angle, and the place where the collision occurred, it is apparent that the Summerall truck had either entered the intersection or was about to enter it at the time it first became apparent to the driver of the truck that the Pitre vehicle was entering and crossing the southbound lane of Highway 167. According to our computations, the Pitre vehicle must have entered U. S. Highway 167 less than 250 feet in front of the approaching Summerall truck. As has already been pointed out, the truck at that time was being driven at a speed of 45 to 47 miles per hour along the preferred thoroughfare, and the collision occurred almost in the center of the intersection.
A motorist who merely stops before entering a right-of-way thoroughfare has performed only one-half of the duty resting on him. He not only must stop, but he must also look out for vehicles on the intersecting street, and he must not enter until he ascertains that it is safe to do so. To stop and then proceed forward into the favored street without first determining that it is safe to enter the intersection constitutes negligence. Hernandez v. State Farm Mutual Automobile Insurance Company, La.App. 3 Cir., 128 So.2d 833, and cases cited therein.
In the instant suit it was the decedent’s duty as he approached this “Y” intersection to look out for vehicles on the favored intersecting street, and to not enter the intersection until he ascertained that it was safe to do so. In our opinion the facts, as determined by the trial judge, show that the Pitre vehicle entered Highway 167 in the path of the Summerall truck when it should have been obvious to the driver that such a crossing could not be made safely. See Vidrine v. Simoneaux, La.App. 3 Cir., 145 So.2d 400 (Cert. denied); Parent v. Patterson Truck Lines, Inc., La.App. 1 Cir., 106 So.2d 27; Lofton v. Cottingham, La.App. 2 Cir., 172 So. 377; Martens v. Penton, 1 Cir., 15 La.App. 35, 130 So. 354.
Although it may be true, as argued by counsel for plaintiffs, that the accident *406 could have been avoided if Summerall had kept his truck in the southbound lane of traffic, we think it equally true that but for the driving of the Pitre vehicle into the intersection directly in front of the oncoming truck the accident would not have occurred. As we have already pointed out, this was an unusually dangerous intersection. A motorist approaching this crossing from the south on State Highway 749 is adequately warned of the danger not only by the nature of the crossing itself, but also by two stop signs and by a red blinking traffic light located over the center of that highway. The Summerall truck was a large vehicle, and the decedent’s view of it was not obstructed, so there is no reason why the decedent should not have seen it as it approached the point where the accident later occurred. In view of all of these circumstances we think Pitre was negligent in entering and attempting to cross U. S. Highway 167 in front of the truck, and that his negligence in doing so was a proximate and contributing cause of the accident, barring plaintiffs from recovery.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendants and against plaintiffs, rejecting plaintiffs’ demands at their costs. The costs of this appeal are assessed to plaintiffs-appellees.
Reversed.